WHITE & CASE LLP
1221 Avenue of the Americas
New York, New York 10020-1095
(212) 819-8200
John K. Cunningham
J. Christopher Shore
Philip M. Abelson

Southeast Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
(305) 371-2700
Richard S. Kebrdle (*pro hac vice* pending)
Jason N. Zakia (*pro hac vice* pending)
Jesse Green (*pro hac vice* pending)

*Attorneys for the Putative Debtor*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| | ) | |
| In re | ) | Chapter 11 |
| | ) | |
| Crédito Real, S.A.B. de C.V., SOFOM, E.N.R.,[1] | ) | Involuntary Case No. 22-10842 (DSJ) |
| | ) | |
| Putative Debtor. | ) | |
| | ) | |

## MOTION OF THE PUTATIVE DEBTOR
## TO DISMISS THE INVOLUNTARY CHAPTER 11 PETITION

---

[1]    The Putative Debtor's corporate headquarters is located at Avenida Insurgentes Sur No. 730, 20th Floor, Colonia del Valle Norte, Alcaldía Benito Juárez, 03103, Mexico City, Mexico.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND ........................................................................................................................4

     A.     Overview of the Company and the Putative Debtor ...............................................4

     B.     The Mexican Liquidation Proceeding and the Chapter 15 Petition........................7

JURISDICTION AND VENUE ...................................................................................................8

BASIS FOR RELIEF .................................................................................................................8

RELIEF REQUESTED................................................................................................................9

ARGUMENT ............................................................................................................................9

I.     THE COURT LACKS JURISDICTION OVER THE PUTATIVE DEBTOR ....................9

     A.     Subjecting the Putative Debtor to a Plenary Chapter 11 Reorganization in the
United States Would Present an Unfair Burden ...................................................11

     B.     The United States Does Not Have a Strong Interest in Presiding over the
Putative Debtor's Restructuring..........................................................................13

     C.     The Involuntary Case Will Not Further Creditors' Interest in Obtaining
Convenient and Effective Relief..........................................................................14

     D.     Mexico Has a Strong Interest in Presiding over the Putative Debtor's
Insolvency Proceeding..........................................................................................15

II.     THE COURT SHOULD DISMISS THIS CASE UNDER FEDERAL RULE 12(b)(3)
BECAUSE THE SOUTHERN DISTRICT OF NEW YORK IS AN IMPROPER
VENUE ......................................................................................................................16

III.     THE COURT SHOULD DISMISS THIS CASE BECAUSE THE INVOLUNTARY
PETITIONERS LACK STANDING UNDER SECTION 303(b) OF THE
BANKRUPTCY CODE..................................................................................................17

IV.     THE COURT SHOULD EXERCISE ITS DISCRETION TO DISMISS THIS CASE
UNDER SECTION 305(a)(1) OF THE BANKRUPTCY CODE. .....................................18

     A.     The Mexican Court and the Chapter 15 Case Offer More Appropriate Forums
to Protect the Interests of the Putative Debtor .....................................................20

     B.     An Involuntary Chapter 11 Case Would Be Administratively Inefficient ...........24

i

      C.     The Involuntary Petitioners' Filing Lacks a Legitimate Bankruptcy Purpose ......26

V.   THE COURT SHOULD DISMISS THE INVOLUNTARY PETITION FOR
"CAUSE" UNDER SECTION 1112(b) OF THE BANKRUPTCY CODE. .......................27

NO PRIOR REQUEST ................................................................................................................29

NOTICE .......................................................................................................................................29

CONCLUSION ............................................................................................................................29

# TABLE OF AUTHORITIES

<u>Page(s)</u>

## CASES

*Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102 (1987)...........................9, 10, 15

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985).......................................................9, 10, 11

*C-TC 9th Ave. P'ship v. Norton Co. (In re C-TC 9th Ave. P'ship)*, 113 F.3d 1304
(2d Cir. 1997)...................................................................................................................26

*Cunard S.S. Co. v. Salen Reefer Servs. AB*, 773 F.2d 452 (2d Cir. 1985)..............................15, 21

*Dussault v. Republic of Argentina*, 2006 U.S. Dist. LEXIS 6477 (S.D.N.Y. Feb.
21, 2006) ..........................................................................................................................18

*Ecoban Fin. Ltd. v. Grupo Acerero Del Norte, S.A. de C.V.*, 108 F. Supp. 2d 349
(S.D.N.Y. 2000)................................................................................................................22

*Equity Broad. Corp. v. Shubert (In re Winstar Comm'ns)*, 284 B.R. 40 (Bankr. D.
Del. 2002) ........................................................................................................................12

*Finanz AG Zurich v. Banco Economico S.A.*, 192 F.3d 240 (2d Cir. 1999)..........................20, 21

*Helicópteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984) ..............................9, 10

*In re AMC Investors, LLC*, 406 B.R. 478 (Bankr. D. Del. 2009) ..................................................18

*In re Bd. of Dirs. of Multicanal S.A.*, 314 B.R. 486 (Bankr. S.D.N.Y. 2004) ...................... passim

*In re Compania de Alimentos Fargo, S.A.*, 376 B.R. 427 (Bankr. S.D.N.Y. Oct.
12, 2007) ........................................................................................................................ passim

*In re Culmer*, 25 B.R. 621 (Bankr. S.D.N.Y. 1982) .....................................................................23

*In re Garcia Avila*, 296 B.R. 95 (Bankr. S.D.N.Y. 2003) ............................................................22

*In re HBA East, Inc.*, 87 B.R. 248 (Bankr. E.D.N.Y. 1988)........................................................27

*In re Int'l Admin. Servs., Inc.*, 211 B.R. 88 (Bankr. M.D. Fla. 1997) .........................................26

*In re Northshore Mainland Servs., Inc.*, 537 B.R. 192 (Bankr. D. Del. 2015)................18, 19, 22

*In re Spanish Cay Co.*, 161 B.R. 715 (Bankr. S.D. Fla. 1993).......................................23, 25, 26

*In re SPhinX, Ltd.*, 351 B.R. 103 (Bankr. S.D.N.Y. 2006)...........................................................16

*In re TPG Troy, LLC*, 492 B.R. 150 (Bankr. S.D.N.Y. 2013) .....................................................19

i

*In re Trina Assoc.*, 128 B.R. 858 (Bankr. E.D.N.Y. 1991)............................................................19

*In re Xacur*, 219 B.R. 956 (Bankr. S.D. Tex. 1998) ............................................................. passim

*In re Yukos Oil Co.*, 321 B.R. 396 (Bankr. S.D. Tex. 2005) ............................................25, 27, 28

*JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*, 412 F.3d 418
    (2d Cir. 2005)............................................................................................................20, 21, 25

*Matter of Fitzgerald Group*, 38 B.R. 16 (Bankr. S.D.N.Y. 1983)................................................18

*Maxwell Commun. Corp. PLC by Homan v. Societe Generale (In re Maxwell
    Commun. Corp. plc)*, 93 F.3d 1036 (2d Cir. 1996)....................................................20

*Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560 (2d Cir. 1996)...................9, 10

*Omni Capital Int'l Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97 (1987).............................................9

*One Techs., LLC v. Amazon.com, Inc.*, 860 F. App'x 785 (2d Cir. 2021)....................................16

*Pennoyer v. Neff*, 95 U.S. 714 (1877) .........................................................................................9

*Remington Rand Corp.-Delaware v. Bus. Sys. Inc.. B.V.*, 830 F.2d 1260 (3d Cir.
    1987) ............................................................................................................................23

*Stonington Partners v. Lernout & Hauspie Speech Prods N.V.*, 310 F.3d 118 (3d
    Cir. 2002) ....................................................................................................................21

*Taberna Preferred Funding IV, Ltd. v. Opportunities II Ltd. (In re Taberna
    Preferred Funding IV, Ltd.)*, 594 B.R. 576 (Bankr. S.D.N.Y. Nov. 8, 2018) ........................17

## STATUTES AND RULES

11 U.S.C. § 105(a) ....................................................................................................................27

11 U.S.C. § 303............................................................................................................................3

11 U.S.C. § 305(a) .........................................................................................................1, 19, 27

11 U.S.C. § 1112(b)(1) ......................................................................................................3, 27, 28

11 U.S.C. § 1517............................................................................................................................2, 8

28 U.S.C. § 157............................................................................................................................8

28 U.S.C. § 1334............................................................................................................................8

28 U.S.C. § 1408............................................................................................................................8

F.R.B.P. 1011(b) ................................................................................................................................1

F.R.B.P. 1014(a)(2)...........................................................................................................................16

Fed. R. Civ. P. 12(b) .........................................................................................................................1

Crédito Real, S.A.B. de C.V., SOFOM, E.N.R., the putative debtor (the "**Putative Debtor**") in the above-captioned involuntary chapter 11 case files this motion (the "**Motion**") seeking the dismissal of the involuntary chapter 11 petition pursuant to sections 105(a), 303, 305(a), and 1112(b) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "**Bankruptcy Code**"), Rule 12(b) of the Federal Rules of Civil Procedure (the "**Federal Rules**") and Rule 1011(b) and 7012(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").  In support of the Motion, the Putative Debtor relies upon and incorporates by reference the (i) *Declaration of Robert Wagstaff in Support of (I) Motion of the Putative Debtor to Transfer Venue of the Involuntary Chapter 11 Case to the United States Bankruptcy Court for the District of Delaware and (II) Motion of the Putative Debtor to Dismiss the Involuntary Chapter 11 Petition* (the "**Wagstaff Declaration**") and (ii) *Declaration of Juan Pablo Estrada Michel in Support of (I) Motion of the Putative Debtor to Transfer Venue of the Involuntary Chapter 11 Case to the United States Bankruptcy Court for the District of Delaware and (II) Motion of the Putative Debtor to Dismiss the Involuntary Chapter 11 Petition* (the "**Estrada Declaration**").  In further support of the Motion, the Putative Debtor respectfully states as follows:

## PRELIMINARY STATEMENT

1.      The Putative Debtor, along with its non-debtor affiliates (together, the "**Company**"), is a specialty finance company based in Mexico City, Mexico.  The Putative Debtor has over US$2.5 billion of funded debt obligations.  Faced with severe liquidity constraints since the start of the COVID-19 pandemic in early 2020, the Company has spent the past year attempting to negotiate a comprehensive restructuring that would allow the Company to dispose of certain assets and restructure its short and medium term financial liabilities.  After those discussions proved unsuccessful, one of the Company's shareholders, Mr. Angel Francisco Romanos

Berrondo,[1] (the "**Mexican Petitioner**"), solely in his capacity as a shareholder, filed a petition in

Mexico, on June 28, 2022, commencing a Special Expedited Commercial proceeding (*Via Sumaria*

*Especial Mercantil*) for the dissolution and liquidation of the Putative Debtor (the "**Mexican**

**Liquidation Proceeding**") pending in the 52nd Civil State Court of Mexico City (the "**Mexican**

**Court**") to facilitate the Putative Debtor's orderly and efficient liquidation in accordance with

Mexican law.  On June 30, 2022, the Mexican Court appointed Mr. Fernando Alonso-de-Florida

Rivero as the provisional liquidator (*Liquidator Judicial Provisional*) (the "**Mexican Liquidator**")

of the Putative Debtor in the Mexican Liquidation Proceeding.  Contemporaneous with the filing

of this Motion, Robert Wagstaff (the "**Foreign Representative**"), as the foreign representative of

the Putative Debtor, is filing a chapter 15 petition (the "**Chapter 15 Petition**") in the United States

Bankruptcy Court for the District of Delaware (the "**Delaware Bankruptcy Court**") seeking

recognition of the Mexican Liquidation Proceeding as a foreign main proceeding under section

1517 of the Bankruptcy Code (the "**Chapter 15 Case**").

2.      On June 22, 2022, certain alleged creditors of the Putative Debtor (the

"**Involuntary Petitioners**") filed an involuntary chapter 11 petition in this Court (the

"**Involuntary Petition**") against the Putative Debtor under section 303 of the Bankruptcy Code

(the "**Involuntary Case**").

3.      There is no reason for the Involuntary Case to exist or to continue.  The Court lacks

personal jurisdiction over the Putative Debtor, which is a Mexican company that operates in

Mexico with Mexican managers and employees.  The vast bulk of the Putative Debtor's assets are

in Mexico, not in the United States.  In addition, the Southern District of New York is an improper

venue, as this district is not the location of the Putative Debtor's domicile, residence, principal

---

[1]     Mr. Romanos is a former officer and director of the Putative Debtor.

place of business in the United States, or its principal assets in the United States as required by 28 U.S.C. § 1408. Dismissal is also appropriate under section 303(b) of the Bankruptcy Code because certain of the Involuntary Petitioners have not provided appropriate evidence of their bond interests establishing standing as petitioning creditors to commence this Involuntary Case.

4.      Even if this Court were to find that it has jurisdiction, venue is proper, and the Involuntary Petitioners have standing, it should still abstain from hearing the Involuntary Case under section 305(a)(1) of the Bankruptcy Code. The Putative Debtor, its assets and affairs are being administered in the Mexican Liquidation Proceeding subject to the supervision of the Mexican Court in Mexico, which has a greater interest in the outcome of the Putative Debtor's liquidation than the United States. The Foreign Representative's Chapter 15 Petition seeking recognition of the Mexican Liquidation Proceeding as a foreign main proceeding will ensure that the Foreign Representative can seek appropriate relief in the United States in aid of the Mexican Liquidation Proceeding. This Involuntary Case cannot provide plenary administration of this foreign debtor in the United States in competition with the orders of the Mexican Court in the Mexican Liquidation Proceeding. For the same reason, dismissal for cause is appropriate under section 1112(b) of the Bankruptcy Code.

5.      The Putative Debtor is also filing with this Court the *Motion of the Putative Debtor to Transfer Venue of the Involuntary Chapter 11 Case to the United States Bankruptcy Court for the District of Delaware* (the "**Motion to Transfer**"), seeking transfer of the Involuntary Case to the Delaware Bankruptcy Court. The Putative Debtor respectfully requests that the Court decide the Motion to Transfer before deciding this Motion. Following the Court's determination, the Putative Debtor respectfully requests that the presiding court then dismiss or deny the Involuntary Petition.

## BACKGROUND

### A.    Overview of the Company and the Putative Debtor

6.    The Company operates a specialty finance business based in Mexico City, Mexico. The Company began operations in 1993 and has built a diversified and scalable business platform that offered financial solutions to market segments generally underserved by the traditional banking system, primarily through the following types of financing products: (i) loans paid via payroll deduction ("**PDLs**"); (ii) consumer loans; (iii) loans for new and used car purchases (the "**Car Loans**"); (iv) small and medium enterprise loans ("**SME Loans**" and together with the PDLs, the consumer loans, and the Car Loans, the "**Crédito Loans**"); and (v) factoring and leasing designed to fund the working capital needs of small and medium enterprises ("**Factoring and Leasing**").[2]

7.    The Putative Debtor is a Mexican publicly-traded entity with variable capital (*Sociedad Anónima Bursátil de Capital Variable* or S.A.B. de C.V.) and an unregulated multiple-purpose financial entity (*Sociedad Financiera de Objeto Múltiple* or "**SOFOM**"; *Entidade No Regulada* or "**E.N.R.**") organized in Mexico under Mexican laws and under the supervision of the Mexican National Banking and Securities Commission (*Comisión Nacional Bancaria y de Valores*, or "**CNBV**").[3]

### i.    Location of the Putative Debtor's Registered Office and Records

8.    The Putative Debtor is incorporated in Mexico, and has always maintained its registered offices in Mexico.[4]   The Putative Debtor has its registered office, headquarters, and

---

[2]    Wagstaff Declaration at ¶ 10.

[3]    Wagstaff Declaration at ¶ 11.

[4]    The Putative Debtor was registered in the Public Registry of Commerce of Mexico City on February 16, 1993. *See* Official Tax Identification Form, attached to the Wagstaff Declaration as Exhibit A. A certified translation into English of the Official Taxation Identification Form will be filed as soon as possible.

principal place of business at Avenida Insurgentes Sur No. 730, 20th Floor, Colonia del Valle

Norte, Alcaldía Benito Juárez, 03103, Mexico City, Mexico, from where the Company's

operations, finances, corporate management, employee management and payroll, and short- and

long-term strategic planning have been historically directed.  All correspondence of the Putative

Debtor is sent from its registered office, including to all investors.[5]

9.      The Putative Debtor is also a resident of Mexico for tax purposes, and its statutory

books and records are held in Mexico. [6]

### ii.    Location of the Putative Debtor's Management and Employees

10.     On June 28, 2022, the Mexican Petitioner filed a petition seeking to commence the

Mexican Liquidation Proceeding.  On June 30, 2022, the Mexican Liquidator was appointed by

the Mexican Court for the Putative Debtor.  As a matter of Mexican law, the Mexican Liquidator

has displaced the Putative Debtor's directors and management and assumed full responsibility for

all assets and operations of the Putative Debtor.  The Mexican Liquidator is an independent

fiduciary duly appointed by and subject to the supervision of the Mexican Court, and is based in

Mexico.[7]

11.     The Putative Debtor has 255 employees, including management and administrative

staff that administers the assets and operations of the Putative Debtor under the authority and

control of the Mexican Liquidator.  All of these employees are based in Mexico.[8]

---

[5]    Wagstaff Declaration ¶ 12.

[6]    *Id*. ¶ 13.

[7]    *Id*. ¶ 14.

[8]    *Id*. ¶ 15.

### iii.    Location of the Putative Debtor's Assets

12.    The Company's specialty finance business is primarily conducted in Mexico.  All of the PDLs, consumer loans, and SME Loans portfolios are originated and paid in Mexico and approximately 34% of the Car Loans portfolio is originated and paid in Mexico.[9]

13.    Based on publicly available information as of December 31, 2021, the Putative Debtor's largest asset is a portfolio of Mexican PDL Loans, which represents 55% of the Crédito Loans. In addition, collectively the Putative Debtor and its direct and indirect subsidiaries in Mexico are the issuers of Mexican Car Loans that represent another 3% of the Crédito Loans. All Crédito Loans issued by the Putative Debtor were originated in Mexico, are governed by Mexican law, and more than 80% of the borrowers of Crédito Loans originated by the Putative Debtor are located in Mexico. [10]

14.    In the United States, the principal assets of the Putative Debtor are its equity interests in its wholly owned subsidiary, Crédito Real USA, Inc. ("**Crédito USA**"), an entity incorporated in 2015 in Wilmington, Delaware. [11]  The Company's business operations in the United States are controlled out of Mexico, while the day-to-day operations are performed by three U.S.-based subsidiaries.  The first, Crédito Real USA Finance, LLC ("**CRUSAFIN**"), operates out of Florida, originates car loans nationwide and manages a car loan portfolio.  The second, Crédito Real USA Business Capital, LLC, operates out of Texas and manages a SME Loan portfolio.  The third, Camino Financial, Inc., operates out of California and manages a consumer loan portfolio.  All three business operations are owned by Crédito USA.  As of the quarter ended December 31,

---

[9]    *Id*. ¶ 16.

[10]    *Id*. ¶ 17.

[11]    *Id*. ¶ 18. A copy of Crédito USA's Delaware Certificate of Incorporation is attached to the Wagstaff Declaration as Exhibit B.

2021, CRUSAFIN's car loan portfolio was almost twice as large as the Putative Debtor's car loan portfolio in Mexico, and collectively Crédito USA and its subsidiaries[12] accounted for 8% of the Company's total loan portfolio.  As set forth in the Wagstaff Declaration, the value of the equity of Crédito USA is estimated to be approximately US$85 million.[13]

15.    The Putative Debtor's property in New York includes a bank account located in New York City with Citibank that has held an average balance of US$3.95 million for the past six months (the "**NY Bank Account**").[14]  The NY Bank Account was established for the purpose of funding the U.S. subsidiaries and complying with requirements under the indentures governed by New York law.[15]  The funds held in the NY Bank Account are significantly less valuable than the Putative Debtor's principal U.S. asset, namely its wholly-owned equity interest in Crédito USA, which is located in Delaware.[16]

### B.    The Mexican Liquidation Proceeding and the Chapter 15 Petition

16.    On June 30, 2022, the Mexican Court issued an order (the "**Mexican Order**") granting the Mexican Petition and commencing the Mexican Liquidation Proceeding.  A copy of the Mexican Order is attached as Exhibit A to the Estrada Declaration.  The Mexican Liquidation Proceeding for the Putative Debtor under the Mexican Corporations Law provides for an orderly

---

[12]    *Id*.  Crédito USA owns equity in eight (8) U.S.-based subsidiaries: (i) CR-MPM, LLC (Delaware), (ii) CR-MPM Financial, LLC (Delaware), (iii) CR USA SME, LLC (Delaware), (iv) Money Mercado, Inc. (Texas), (v) Camino Financial, Inc. (Delaware), (vi) CREAL Houston, LLC (Delaware), (vii) Crédito Real USA Business Capital, LLC (Delaware), and (viii) Crédito Real USA Finance, LLC (Florida).  Further, Crédito Real USA Finance, LLC wholly owns two (2) U.S.-based subsidiaries: (i) Auto Funding Services, LLC (Florida) and (ii) Credito Real USA Receivables, LLC (Delaware).

[13]    *Id*.  According to the Company's filings and corporate presentations as of the third quarter ended September 30, 2021, the Putative Debtor has contemplated selling certain of its business units, including the operations of Crédito Real USA Finance LLC.

[14]    *Id*. ¶ 19.  Currently, the NY Bank Account has a balance of approximately US$1.3 million.

[15]    *Id*. ¶ 19.

[16]    *Id*. ¶ 19.

dissolution and liquidation procedure for the assets and affairs of the Putative Debtor at the direction and control by the Mexican Liquidator.[17]

17.     Also on June 30, 2022, the Mexican Court issued an order (the "**Precautionary Measures Order**") granting certain *ex parte* precautionary measures on a provisional basis.[18]  A copy of the Precautionary Measures Order is attached as Exhibit B to the Estrada Declaration.

18.     The Foreign Representative has been duly appointed by the Mexican Liquidator as the foreign representative of the Mexican Liquidation Proceeding.  Contemporaneously herewith, the Foreign Representative is filing a Chapter 15 petition in the Delaware Bankruptcy Court seeking an order granting recognition of the Mexican Liquidation Proceeding under section 1517 of the Bankruptcy Code as the foreign main proceeding of the Putative Debtor.[19]

## JURISDICTION AND VENUE

19.     This Court has jurisdiction to consider the relief requested herein pursuant to sections 157 and 1334 of title 28 of the United States Code.  As explained below, the Putative Debtor disputes whether the Court has personal jurisdiction to grant the relief requested by the Involuntary Petitioners.

20.      As explained in the Motion to Transfer, venue is not proper in the Southern District of New York under 28 U.S.C. § 1408.

## BASIS FOR RELIEF

21.     The predicates for the relief sought in this Motion are sections 105(a), 303, 305(a), and 1112(b) of the Bankruptcy Code, Federal Rule 12(b) and Bankruptcy Rules 1011(b) and 7012(b).

---

[17]   Estrada Declaration ¶¶ 18, 21.

[18]   *Id.* ¶ 13.

[19]   *Id.* ¶ 17.

### RELIEF REQUESTED

22.    The Putative Debtor respectfully requests that the Court enter an order, substantially in the form attached as **Exhibit A** (the "**Proposed Order**"), dismissing the Involuntary Case with prejudice, and granting such other and further relief as may be just and proper.

### ARGUMENT

I.    **THE COURT LACKS JURISDICTION OVER THE PUTATIVE DEBTOR**

23.    A court may not assert *in personam* jurisdiction over a nonresident unless the exercise of such jurisdiction comports with due process under the United States Constitution. *Helicópteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984) (citing *Pennoyer v. Neff*, 95 U.S. 714 (1877)).  The due process requirement for personal jurisdiction "protects a person without meaningful ties to the forum state from being subjected to binding judgments within its jurisdiction." *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996); *see also Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102 (1987) (construing constitutional due process requirements and holding that exercise of personal jurisdiction over foreign defendant whose operations and assets were almost entirely outside of United States would be unconstitutional).  The assertion of *in personam* jurisdiction over a defendant requires proof, among other things, that the exercise of jurisdiction over the defendant would be fair and reasonable.  *See In re Xacur*, 219 B.R. 956, 966 (Bankr. S.D. Tex. 1998) (*citing Omni Capital Int'l Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987)*, Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)).  These standards have not been met in this case and, accordingly, it should be dismissed.

24.    The Supreme Court has recognized two types of *in personam* jurisdiction: specific jurisdiction and general jurisdiction. A court exercises specific jurisdiction over a defendant when

the underlying action specifically arises out of or is related to that defendant's particular contact with the forum. A court exercises general jurisdiction over a defendant when the underlying action is not related to the defendant's contacts with the forum. *Helicópteros*, 466 U.S. at 414 & nn. 8 & 9. The exercise of general jurisdiction is appropriate only when a defendant has had "continuous and systematic general business contacts" with the forum that are of a magnitude and type that make it reasonable to exercise such jurisdiction. *Id*. at 414-16; *accord Metropolitan Life*, 84 F.3d at 568. In addition, "[i]n analyzing both specific and general jurisdiction, the court must evaluate whether the exercise of jurisdiction would be fair and reasonable." *See In re Xacur*, 219 B.R. at 967 (citing *Burger King Corp.*, 471 U.S. at 477). The court must consider whether the defendant "purposefully availed" itself of the forum such that it could reasonably anticipate being brought into court there. *See Burger King Corp.*, 471 U.S. at 475.

25.     A chapter 11 case is a plenary proceeding that involves property, issues, creditors and claims not related to the debtor's contacts with the forum. As such, it requires a bankruptcy court to exercise general jurisdiction over a debtor. *In re Xacur*, 219 B.R. at 967 (assessing whether the court had general jurisdiction over an involuntary debtor, and whether the exercise of such jurisdiction was fair and reasonable). A court must exercise particular care when considering whether to assert *in personam* jurisdiction over a foreign corporation, like the Putative Debtor, that has no presence and limited assets in the United States. "The unique burden placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching long arm personal jurisdiction over national borders." *Asahi Metal*, 480 U.S. at 114 (holding that exercise of personal jurisdiction over foreign defendant whose operations and assets were almost entirely outside the United States would be unconstitutional).

26.     For example, in *Xacur*, the bankruptcy court dismissed an involuntary chapter 11

petition against a Mexican national for lack of personal jurisdiction.  The court found "the exercise

of such jurisdiction would not be fair and reasonable" because there was a "preferable, recognized,

and cost-effective legal remedy" available to petitioners in Mexico, and while the alleged debtor

had assets within the bankruptcy court's jurisdiction, most of the debtor's assets were in Mexico.

*In re Xacur*, 219 B.R. at 967-68. In considering whether the exercise of personal jurisdiction would

be fair and reasonable, the *Xacur* court considered "the burden on the defendant, the forum's

interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective

relief, and the procedural and substantive policies of other nations whose interests are affected by

the assertion of jurisdiction." *In re Xacur*, 219 B.R. at 967-68 (citing *Burger King*, 471 U.S. at 477

(additional citations omitted)).

27.     This Court should decline to exercise jurisdiction over the Putative Debtor because

application of the *Xacur* factors to this case demonstrates that it is neither fair nor reasonable and,

as such, is unconstitutional, for the Court to do so.

**A.      Subjecting the Putative Debtor to a Plenary Chapter 11 Reorganization in
the United States Would Present an Unfair Burden**

28.     United States courts routinely decline to exercise *in personam* jurisdiction over

foreign defendants in civil litigation whose contacts with the United States are so limited that to

do so will subject them to an unfair burden.  Here, the financial and administrative burdens on the

Putative Debtor associated with maintaining an involuntary chapter 11 case are far greater than

those associated with mere civil litigation, and it would be unfair, unreasonable and unduly

burdensome on the Putative Debtor for this Court to compel it to do so.  The Putative Debtor has

no office, operations, employees or representatives in the United States, but instead, all of the

personnel who would be required to participate in the involuntary chapter 11 case are located in

Mexico.[20]  Moreover, because Putative Debtor is a Mexican corporation, its books and records are maintained in Spanish and would have to be translated for purposes of the involuntary chapter 11 case.  While the Putative Debtor does own stock in a U.S. subsidiary and has a bank account in New York, the bulk of its assets are in Mexico.[21]

29.    The New York law governed notes issued by the Putative Debtor (the "**NY Notes**") do not provide a basis to assert that the Putative Debtor has "purposefully availed" itself of this forum such that it could have reasonably anticipated that it would be the subject of an involuntary chapter 11 case in New York. While the documents governing the NY Notes provide that the Putative Debtor submits to the jurisdiction of the New York courts with respect to all disputes under the relevant indenture and notes,[22] this does not mean that the Putative Debtor has submitted to a plenary U.S. bankruptcy case that necessarily would involve the reorganization of the Putative Debtor's Mexican assets and operations, impacting all creditors' rights as against the debtor with the goal of restructuring the Putative Debtor's debt and rehabilitating its business. *See Equity Broad. Corp. v. Shubert (In re Winstar Comm'ns)*, 284 B.R. 40, 44, 52 (Bankr. D. Del. 2002) (finding that party did not consent to bankruptcy court jurisdiction by entering into purchase agreement and release agreement with a jurisdictional provision for any "proceeding or claim brought by any other party pursuant to this Agreement" that "omits any reference to Bankruptcy Court jurisdiction").

30.    Given that the Putative Debtor already is liquidating under Mexican law in the Mexican Liquidation Proceeding (and seeking recognition of the Chapter 15 Case), proceeding

---

[20]    Walstaff Declaration ¶¶ 12, 14-15.

[21]    *Id*. ¶¶ 16-19.

[22]    *See, e.g.*, Offering Memorandum for 8% Senior Notes due 2028, available at http://cdn.investorcloud.net/creal/InformacionFinanciera/Prospectos/Notas-2028.pdf at 245.

with this Involuntary Case in the United States would needlessly dissipate estate assets.  *In re Bd. of Dirs. of Multicanal S.A.*, 314 B.R. 486, 522 (Bankr. S.D.N.Y. 2004) (noting that a "central purpose" of the modified universality approach of the Bankruptcy Code is to avoid the waste and inefficiency of multiple proceedings).  Also, the Putative Debtor is now controlled by the Mexican Liquidator, who is charged under Mexican law to dissolve the Company, not run a chapter 11 case. A competing proceeding is likely to cause disruption as the Company advances the Mexican Liquidation Proceeding.  Permitting this Involuntary Case to proceed would severely and unfairly burden the Putative Debtor.

31.    Most significantly, if this Court asserts jurisdiction over the Putative Debtor and directs that a chapter 11 case be opened, because there is a pending liquidation proceeding in Mexico*, there is a significant risk that orders of this Court relating to the Putative Debtor's assets and operations in Mexico will not be given effect in Mexico, particularly if an order of this Court conflicts with the orders of the Mexican Court.  *Multicanal S.A.*, 314 B.R. at 523 ("The inability of this Court to force the rehabilitation of this debtor over its objection provides a further reason for dismissal of the involuntary proceeding.").

### B.    The United States Does Not Have a Strong Interest in Presiding over the Putative Debtor's Restructuring

32.    The United States has no real interest in presiding over the Putative Debtor's restructuring, as the Putative Debtor has limited assets in the United States, and does not have any operations, employees or representatives in the United States.  No important federal interest in this case warrants this Court's interference with those proceedings or justifies the collateral attack that the Involuntary Petitioners occur if this proceeding continues.  To the contrary, U.S. courts have a long history of respecting foreign insolvency proceedings and expect the same respect to be afforded to U.S. proceedings by foreign jurisdictions. *See*, *e.g.*, *Multicanal*, 314 B.R. at 521 (2004)

(stating that U.S. courts have recognized that foreign courts have an interest in presiding over the insolvency proceedings of their domestic entities to promote the systematic distribution of assets). The relief the Involuntary Petitioners seek would conflict with both U.S. and Mexican public policy.

### C.    The Involuntary Case Will Not Further Creditors' Interest in Obtaining Convenient and Effective Relief

33.    With no operations and limited assets in the United States, there is no prospect for a successful reorganization of the Putative Debtor in this forum especially given the risk that the Mexican Court is not likely to give effect to orders of this Court. Without the cooperation of the Mexican Court, which has asserted exclusive jurisdiction over the Putative Debtor's estate, and which can exercise *in rem* jurisdiction over most of the Company's assets, any attempt by this Court to restructure the Putative Debtor's business would be futile. *Cf. Multicanal S.A.*, 314 B.R. at 521 (in dismissing the case under section 305, the court found that concurrent proceedings in Argentina and the United States would "hinder rather than advance an equitable distribution," noting that "a concurrent U.S. case would be deemed to conflict with, rather than compliment [Argentine law], and that it would receive no recognition in Multicanal's home country . . . to the extent it purported to administer asserts in Argentina.").

34.    Conversely, convenient and effective relief with respect to the Putative Debtor's insolvency as a whole is available in the Mexican Liquidation Proceeding, in conjunction with the Foreign Representative's petition for relief under chapter 15.   The Mexican Liquidation Proceeding will allow the Mexican Liquidator to take possession of all of the Putative Debtor's assets, and immediately take the steps necessary to liquidate or otherwise dispose of the entity's

assets for the highest possible price for the benefit of all stakeholders.[23]    In the Mexican

Liquidation Proceeding, creditors are given notice of timing and procedures for submitting their

claims and matters pertaining to potential distributions, are able to engage with the Mexican

Liquidator regarding these matters and the conduct of the Mexican Liquidation Proceeding and, as

set forth above, may apply to the Mexican Court for relief if necessary. [24]    Additionally, Mexican

law provides for a robust appeal process, including a constitutional appeal that can be filed before

Mexican federal courts against any action from a government authority in violation of an

individual's constitutional rights.[25]    And the chapter 15 proceeding will allow the Foreign

Representative to seek appropriate relief in the United States to further the goals of the Mexican

Liquidation Proceeding.

### D.    Mexico Has a Strong Interest in Presiding over the Putative Debtor's Insolvency Proceeding

35.    U.S. courts recognize "that foreign courts have an interest in presiding over the

insolvency proceedings of their own domestic business entities to promote the systematic

distribution of a debtor's assets." *Multicanal S.A.*, 314 B.R. at 521 (citing *Cunard*, 773 F.2d at

458).  Because the Putative Debtor is party to the Mexican Liquidation Proceeding, this Court must

consider:

> the procedural and substantive policies of other *nations* whose interests are affected by the
> assertion of jurisdiction . . . . [T]hose interests, as well as the Federal interest in
> Government's foreign relations policies, will be best served by a careful inquiry into the
> reasonableness of the assertion of jurisdiction in the particular case, and an unwillingness
> to find the serious burdens on an alien defendant outweighed by minimal interests on the
> part of the plaintiff or the forum [jurisdiction].

*Asahi Metal*, 480 U.S. at 115.

---

[23]    Estrada Declaration ¶ 23.

[24]    *Id*. ¶ 24.

[25]    *Id*. ¶ 27.

36.    The Mexican Court has jurisdiction over the Putative Debtor and its creditors, exclusive *in rem* jurisdiction over the Putative Debtor's assets in Mexico.  Both the interests of Mexico and the U.S. interest in its foreign relations policies weigh in favor of dismissal. *Cf. In re SPhinX, Ltd.*, 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006) (noting the importance of a court's power, especially in a reorganization, to assert jurisdiction over creditors, and finding in a chapter 15 case that debtor's "center of main interest" was outside of the Cayman Islands, pointing, among other things, the Cayman Islands' lack of jurisdiction (absent consent) over the debtor' primary assets, creditors and investors).

37.    Given the Putative Debtor's limited connections to the United States, it is neither fair nor reasonable, nor constitutional, for the Court to exercise jurisdiction over the Putative Debtor in this Involuntary Case.

## II.    THE COURT SHOULD DISMISS THIS CASE UNDER FEDERAL RULE 12(b)(3) BECAUSE THE SOUTHERN DISTRICT OF NEW YORK IS AN IMPROPER VENUE

38.    Dismissal of this action is also appropriate because the Involuntary Petitioners have brought the case in an improper venue.  *See One Techs., LLC v. Amazon.com, Inc.*, 860 F. App'x 785, 788 (2d Cir. 2021) (affirming dismissal of case for improper venue); *see also* Fed. R. Civ. P. 12(b)(3); Bankruptcy Rule 1014(a)(2).  As explained in the Motion to Transfer, the Southern District of New York is an improper venue for this Involuntary Case, as this district is not the location of the Putative Debtor's domicile, residence, principal place of business in the United States, or its principal assets in the United States.   This Involuntary Case concerns a single Mexican company with one principal U.S. asset—the stock of its U.S. subsidiary—which is located in Delaware.  Thus, dismissal of this Involuntary Case is appropriate under Federal Rule 12(b)(3) and Bankruptcy Rule 1014(a)(2).

III.   **THE COURT SHOULD DISMISS THIS CASE BECAUSE THE INVOLUNTARY PETITIONERS LACK STANDING UNDER SECTION 303(b) OF THE BANKRUPTCY CODE.**

39.     Section 303 of the Bankruptcy Code sets forth the minimum number of creditors required to commence an involuntary case and contains restrictions as to which types of creditors may commence an involuntary bankruptcy case.  Section 303(b)(1) provides that an involuntary case may be commenced:

> by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount, or an indenture trustee representing such a holder, if such noncontingent, undisputed claims aggregate at least $15,775 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims.

40.     A petitioning creditor "bears the initial burden of establishing a prima facie case that it meets the eligibility requirements set forth in section 303(b) of the Bankruptcy Code." *Taberna Preferred Funding IV, Ltd. v. Opportunities II Ltd. (In re Taberna Preferred Funding IV, Ltd.)*, 594 B.R. 576, 586 (Bankr. S.D.N.Y. Nov. 8, 2018).  "[I]f the Court finds that the Petitioning Creditors have not met their burden of establishing a prima facie case that they satisfy the eligibility requirement in section 303(b) of the Bankruptcy Code, the Court may enter judgment against them on this issue and the petition in th[e] involuntary case should be dismissed." *Id*.

41.     The Involuntary Petition itself is inadequate because the two purported bondholders (Institutional Multiple Investment Fund LLC and VP Fund Solutions (Liechtenstein) AG) failed to provide sufficient evidence that they each hold unsecured claims that are "not contingent as to liability or the subject of a bona fide dispute as to liability or amount".  The two purported holders of bond claims failed to provide sufficient evidence that they are the actual beneficial holders of bonds, such as by providing evidence of the chain of ownership of such bonds, running up from the holder of the global note to the DTC participant and on to the purported beneficial holder.  To prove these holdings, the petitioning creditors cannot simply provide

17

Bloomberg screenshots or letters from their bankers. *Dussault v. Republic of Argentina*, 2006 U.S. Dist. LEXIS 6477, at *6 (S.D.N.Y. Feb. 21, 2006) (finding that letter from bank describing bond holding "does not meet the court's standards"). Assuming that these two bondholders did have appropriate evidence, they ostensibly elected not to provide it because they wanted to rush their filing to impose maximum on the Putative Debtor to accede to their demands against its will and force it into an involuntary chapter 11 case.

## IV.    THE COURT SHOULD EXERCISE ITS DISCRETION TO DISMISS THIS CASE UNDER SECTION 305(a)(1) OF THE BANKRUPTCY CODE.

42.    If this Court finds that, notwithstanding the foregoing, it is appropriate to exercise jurisdiction over the Putative Debtor in this case, the Court should nevertheless dismiss this Involuntary Case in the exercise of its discretion because the interests of the Putative Debtor and its creditors will be better served by dismissal. *See* 11 U.S.C. § 305(a)(1) ("The court, after notice and a hearing, may dismiss a case under this title . . . the interests of creditors and the debtor would be better served by such dismissal.").

43.    "The decision to abstain, either by suspension or dismissal, is committed to the Court's discretion." *In re Compania de Alimentos Fargo, S.A.*, 376 B.R. 427, 433 (Bankr. S.D.N.Y. Oct. 12, 2007). Granting an abstention motion under section 305(a)(1) requires more than a simple balancing of harm to the debtor and creditors; rather, the interests of both the debtor and its creditors must be served by granting the requested relief. *In re Northshore Mainland Servs., Inc.*, 537 B.R. 192, 203 (Bankr. D. Del. 2015) (citing *In re AMC Investors, LLC*, 406 B.R. 478, 488 (Bankr. D. Del. 2009)).

44.    Whether dismissal under section 305(a)(1) is appropriate must be considered on a case-by-case basis. *Matter of Fitzgerald Group*, 38 B.R. 16, 17 (Bankr. S.D.N.Y. 1983). The factors used by courts to dismiss cases under section 305(a)(1) include

(1) whether another forum is available to protect the interests of both parties or there is already a pending proceeding [;] (2) economy and efficiency of administration; (3) whether federal proceedings are necessary to reach a just and equitable solution; (4) whether there is an alternative means of achieving an equitable distribution of assets; (5) whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case; (6) whether a non-federal insolvency has proceeded so far that it would be costly and time consuming to start afresh with the federal bankruptcy process; and (7) the purpose for which bankruptcy jurisdiction   has been sought.

*In re Compania de Alimentos Fargo, S.A.*, 376 B.R. at 433; *see also Multicanal S.A.*, 314 B.R. at 522-23; *In re Northshore Mainland Servs., Inc.*, 537 B.R. 192, 203-04 (Bankr. D. Del. 2009) (listing same factors).

45.      No one factor is controlling; each factor is not to be accorded the same weight. *In re TPG Troy, LLC*, 492 B.R. 150, 160 (Bankr. S.D.N.Y. 2013) ("[w]hile all factors are considered, not all are given equal weight in every case") (citation omitted).  And "[a]lthough the tests are useful, in determining whether dismissal under § 305(a) is appropriate, courts must look to the facts of the individual cases." *In re Trina Assoc.*, 128 B.R. 858, 867 (Bankr. E.D.N.Y. 1991). Moreover, "[a]lthough abstention under [section] 305 is considered an extraordinary remedy, 'the pendency of a foreign insolvency proceeding alters the balance by introducing considerations of comity into the mix.'"  *In re Northshore Mainland Servs., Inc.*, 537 B.R. at 207.  In that instance, courts "the importance of judicial deference to foreign bankruptcy proceedings" as "deference to foreign insolvency proceedings will, in many cases, facilitate equitable, orderly and systematic distribution of the debtor's assets."  *Id.* (quoting *In re Compania*, 376 B.R. at 434) (quotation marks omitted).

46.    The relevant factors[26] weigh strongly in favor of this Court's dismissal of the Involuntary Petition pursuant to section 305(a)(1) as best serving the interests of both the Putative Debtor and its creditors as a whole.

**A.    The Mexican Court and the Chapter 15 Case Offer More Appropriate Forums to Protect the Interests of the Putative Debtor**

47.    The first and fourth section 305(a)(1) factors—whether another forum is available to protect the interests of both parties or there is already a pending proceeding, and alternative means of achieving an equitable distribution of assets—weigh in favor of abstention, as the Putative Debtor has already commenced insolvency proceedings in Mexico, and the Foreign Representative has sought recognition of those proceedings under chapter 15. "Although abstention under § 305 is considered an extraordinary remedy, the pendency of a foreign insolvency proceeding alters the balance by introducing considerations of comity into the mix." *In re Compania de Alimentos Fargo, S.A.*, 376 B.R. at 433. The Second Circuit "has frequently underscored the importance of judicial deference to foreign bankruptcy proceedings." *Id.* (citing *Finanz AG Zurich v. Banco Economico S.A.*, 192 F.3d 240, 246 (2d Cir. 1999)). "[D]eference to foreign insolvency proceedings will, in many cases, facilitate 'equitable, orderly and systematic' distribution of the debtor's assets." *Maxwell Commun. Corp. PLC by Homan v. Societe Generale (In re Maxwell Commun. Corp. plc)*, 93 F.3d 1036, 1048 (2d Cir. 1996); *JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*, 412 F.3d 418, 424 (2d Cir. 2005) ("We have repeatedly held that U.S. courts should ordinarily decline to adjudicate creditor claims that are the subject of a foreign bankruptcy proceeding . . . . In such cases, deference to the foreign court is appropriate so long as the foreign proceedings are procedurally fair and (consistent with the principles of Lord

---

[26]    The fifth and sixth section 305(a)(1) factors are of limited relevance here, as the Putative Debtor's extensive efforts to reach agreement with its creditors were unavailing, and the Mexican Liquidation Proceeding is in its early stages.

Mansfield's holding) do not contravene the laws or public policy of the United States."); *Stonington Partners v. Lernout & Hauspie Speech Prods N.V.*, 310 F.3d 118, 126 (3d Cir. 2002) ("The principles of comity are particularly appropriately applied in the bankruptcy context because of the challenges posed by transnational insolvencies"); *Finanz AG Zurich*, 192 F.3d at 246 ("We have repeatedly noted the importance of extending comity to foreign bankruptcy proceedings. Since '[t]he equitable and orderly distribution of a debtor's property requires assembling all claims against the limited assets in a single proceeding,' American courts regularly defer to such actions."); *Cunard*, 773 F.2d at 457 ("American courts have consistently recognized the interest of foreign courts in liquidating or winding up the affairs of their own domestic business entities.")

48.    A court facing a request to abstain in favor of a foreign proceeding "must satisfy itself that the foreign forum will determine and adjust the parties' rights in a fair and equitable manner." *In re Compania de Alimentos Fargo, S.A.*, at 376 B.R. at 434; *JPMorgan Chase Bank v. Altos Hornos de Mexico. S.A. de C.V.*, 412 F.3d 418, 424 (2d Cir. 2005) ("[D]eference to the foreign court is appropriate so long as the foreign proceedings are procedurally fair and . . . do not contravene the laws or public policy of the United States."); *Cunard S.S. Co. v. Salen Reefer Servs. AB*, 773 F.2d 452, 457 (2d Cir. 1985) ("Comity will be granted . . . if it is shown that the foreign court is a court of competent jurisdiction, and that the laws and public policy of the forum state and the rights of its residents will not be violated.").

49.    The courts of Mexico provide an alternative, and more appropriate, forum for the Putative Debtor's liquidation because its courts have jurisdiction over the parties and assets involved, and have a strong interest in resolving the insolvencies of their own business entities. As noted above, the Mexican Liquidator appointed in the Mexican Liquidation Proceeding has taken possession of all of the Putative Debtor's assets, and will enact the steps necessary to

21

liquidate or otherwise dispose of the entity's assets for the highest possible price for the benefit of creditors.[27]  Creditors will be given notice of timing and procedures for submitting their claims and matters pertaining to potential distributions, can engage with the Mexican Liquidator regarding these matters and the conduct of the Mexican Liquidation Proceeding and, as set forth above, may apply to the Mexican Court for relief if necessary.[28]  Additionally, Mexican law provides for a robust appeal process, including a constitutional appeal that can be filed before Mexican federal courts against any action from a government authority in violation of an individual's constitutional rights.[29]  And the Mexican Corporations Law substantially accords with the order of priority prescribed by U.S. law, as it only permits equity holders to receive distributions after other creditors have received payment in full.[30]

50.    There is no evidence that the Mexico insolvency proceedings contravene the public policy of the United States.  *See In re Northshore Mainland Servs.*, Inc., 537 B.R. 192 (Bankr. D. Del. 2015) (dismissing chapter 11 cases and concluding abstention was in the best interests of the creditors and all but one of the chapter 11 debtors because the foreign proceedings "demonstrate that the [d]ebtors are being treated fairly and impartially," and there was "no evidence that the [foreign laws] contravene the public policy of the United States").  Indeed, courts repeatedly recognize that insolvency proceedings in Mexico are fair and equitable.  *See*, *e.g.*, *In re Garcia Avila*, 296 B.R. 95, 108 (Bankr. S.D.N.Y. 2003) (assessing whether Mexican bankruptcy proceeding "must treat all creditors and interest holders justly" and finding that the proceeding " easily meets these concerns"); *Ecoban Fin. Ltd. v. Grupo Acerero Del Norte, S.A. de C.V.*, 108 F.

---

[27]    Estrada Declaration ¶ 23.

[28]    *Id*. ¶ 24.

[29]    *Id*.

[30]    *Id*. ¶ 29.

Supp. 2d 349, 354 (S.D.N.Y. 2000) (dismissing on comity grounds claims by a U.S. creditor in view of Mexican insolvency proceeding, noting that the court refused to permit the U.S. creditor "to frustrate and evade foreign bankruptcy laws"); *In re Xacur*, 219 B.R. at 970 (rejecting argument that Mexican court would "treat the parties unfairly and [ ] deprive the petitioning creditors of remedies. Mexico has been found to provide an adequate alternative forum.").

51.     Finally, the Involuntary Petitioners have no justifiable basis to complain about the Mexican Liquidation Proceeding, as it was plainly foreseeable by all parties that any insolvency proceeding for the Putative Debtor would occur in Mexico.  The offering memoranda for the NY Notes stated that the Putative Debtor is "incorporated in Mexico, and most of our assets and operations are located in Mexico.  As a result we are subject to political, economic, legal and regulatory risks specific to Mexico."[31]  The offering memoranda also acknowledged that the Putative Debtor may be liquidated pursuant to applicable Mexican law.[32]  Indeed, "[e]very person who deals with a foreign corporation impliedly subjects himself to such laws of the foreign government, affecting the powers and obligations of the corporation with which he voluntarily contracts as the known and established policy of that government authorizes." *In re Spanish Cay Co.*, 161 B.R. 715, 725 (Bankr. S.D. Fla. 1993) (quoting *In re Culmer*, 25 B.R. 621, 632 (Bankr. S.D.N.Y. 1982)); *see also Remington Rand Corp.-Delaware v. Bus. Sys. Inc.. B.V.*, 830 F.2d 1260,

---

[31]   Offering   Memorandum   for   8%   Senior   Notes   due   2028,   available   at http://cdn.investorcloud.net/creal/InformacionFinanciera/Prospectos/Notas-2028.pdf at 39.

[32]   *Id.,* at 50 (observing Mexican statutory priorities in respect of wage claims and secured obligations, taxes and other administrative expenses would have priority in the event of a liquidation or bankruptcy and describing how claims of noteholders may be treated under Mexican law "in the event we are declared insolvent, bankruptcy, or become subject to *concurso mercantile[e]*"); 52 (describing Putative Debtor's payment obligations where "the Issuer is declared bankrupt or dissolved or put into liquidation for purposes of Mexican law) 154-155 (providing description of Mexican bankruptcy law and Mexican law regarding perfection and enforcement of security interests).

1271 (3d Cir. 1987) ("Creditors of an insolvent foreign corporation may be required to assert their claims against a foreign bankrupt before a duly convened foreign bankruptcy tribunal.").

**B.      An Involuntary Chapter 11 Case Would Be Administratively Inefficient**

52.      The second and third section 305(a)(1) factors—whether the chapter 11 proceeding would serve the economy and efficiency of administration and is necessary to reach a just and equitable solution—weigh in favor of abstention.  "In making a determination about the  economy and efficiency, courts consider, inter alia, the physical location of the parties in interest, the existence of parallel actions, and the nature of the dispute."  *See In re Compania*, 376 B.R. at 439. An involuntary chapter 11 case would be an administrative nightmare, not merely administratively burdensome or even inefficient.  All of the Putative Debtor's managers and employees are located in Mexico.  A liquidation proceeding is underway in Mexico under the authority and control of the Mexican Liquidator, and the Foreign Representative is seeking recognition of that proceeding in the Delaware Bankruptcy Court.  In addition, the Involuntary Petition should be dismissed because there is no reasonable possibility that the Putative Debtor will eventually consummate a plan of reorganization as most of its assets are not in the United States, and the Mexican Liquidation Proceeding has commenced in Mexico.

53.      Creditors would not be served by requiring the Putative Debtor to commence a reorganization process under U.S. law.  *Multicanal S.A.*, 314 B.R. at 522 (noting that a "central purpose" of the modified universality approach of the Bankruptcy Code is to avoid the waste and inefficiency of multiple proceedings).

54.      That is precisely the same situation that the Court faced in *Multicanal*. There, the Court dismissed an involuntary case filed by disgruntled noteholders against an Argentine company where the putative debtor was the subject of a foreign insolvency proceeding and had limited U.S. assets. In dismissing the case, the court recognized "the objective futility of the

maintenance of a Multicanal reorganization in the United States over the opposition of the putative

debtor." *Multicanal* S.A., 314 B.R. at 522.  Likewise, in *In re Yukos Oil Co.*, 321 B.R. 396 (Bankr.

S.D. Tex. 2005), the court dismissed the debtor's chapter 11 case even though the debtor, a Russian

oil company, had submitted to U.S. jurisdiction, finding that a reorganization could not be

effectuated properly because most of Yukos' assets were located in Russia and because the Russian

government, a key party in interest, would not appear in the U.S. proceeding. *Yukos Oil Co.*, 321

B.R. at 411; *see also In re Grupo Iusacell Celular, S.A. de C.V.*, Transcript of Hearing on Motion

to Dismiss Involuntary Petition for Insufficiency of Process, Case No. 06-11599 (BRL) (Bankr.

S.D.N.Y. Oct. 11, 2006) at 32:8-11 ("You are not seeking a parallel proceeding; you are seeking

a proceeding that is in opposition to the proceeding pending in Mexico").

55.    Here, as in those cases, any efforts to restructure the debtor's business and equitably

distribute assets to creditors in an involuntary U.S. chapter 11 case would be futile, especially

given that the Mexican courts are not likely to give effect to orders of this Court in the event of a

conflict. *See Multicanal S.A.*, 314 B.R. at 523 (noting that "[o]n a motion to dismiss a court must

take into account its ability to enforce its orders").

56.    When considering whether to dismiss a chapter 11 case, courts have closely

examined the likelihood of their orders being enforced in the jurisdiction where the majority of a

debtor's assets are located. For example, in *In re Xacur*, 219 B.R. at 968, the bankruptcy court

dismissed an involuntary case involving a Mexican debtor, in part because "[a]fter considering the

testimony of the Mexican law experts, the Court concludes that there exists a substantial possibility

that the courts in Mexico may not recognize the jurisdiction of this Court." *See Multicanal S.A.*,

314 B.R. at 523 ("The inability of this Court to force the rehabilitation of this debtor over its

objection provides a further reason for dismissal of the involuntary proceeding."); *In re Spanish*

25

*Cay Co.*, 161 B.R. at 725 (potential for successful chapter 11 reorganization at best questionable because U.S. court orders may be given no effect in Bahamas); *In re Int'l Admin. Servs., Inc.*, 211 B.R. 88, 93 (Bankr. M.D. Fla. 1997) (stating that bankruptcy court practically lacks ability to enforce jurisdiction over property located in foreign country without assistance of foreign court).

57.     Furthermore, it likely would prove impossible to restructure the claims of Putative Debtor's Mexican creditors that are not subject to the jurisdiction of this Court.  *See In re Spanish Cay*, 161 B.R. at 725. The probable lack of cooperation of the Mexican courts in recognizing this Court's orders regarding the Putative Debtor's Mexican assets therefore weighs heavily in favor of dismissal.  *See In re Compania*, 376 B.R at 439 ("[T]he Petitioners fail to explain what a confirmed chapter 11 plan would accomplish. . . . someone would have to take the confirmed plan to Argentina, and ask the local courts to grant comity to the chapter 11 plan" which would present "several obstacles" and thus a chapter 11 reorganization "would undoubtedly be time-consuming and expensive, and provide a questionable benefit.")

## C.     The Involuntary Petitioners' Filing Lacks a Legitimate Bankruptcy Purpose

58.     The last section 305(a)(1) factor—whether the involuntary chapter 11 proceeding has a legitimate bankruptcy purpose—also weighs in favor of abstention.   It is beyond dispute that where, as here, the Involuntary Petitioners have commenced this Involuntary Case as a negotiation tactic rather than for purposes of reorganizing the debtor, the petition must be dismissed. See *In re Compania*, 376 B.R. at 427 (finding a petition was filed for an improper purpose where the parallel chapter 11 case would "hijack" the foreign proceeding in an effort to "increase [petitioners'] leverage in any negotiations."); *Multicanal S.A.*, 314 B.R at 523 (dismissing an involuntary chapter 11 petition where no reasonable likelihood of reorganization existed and to attempt such a process would be objectively futile); *see also C-TC 9th Ave. P'ship v. Norton Co. (In re C-TC 9th Ave. P'ship)*, 113 F.3d 1304, 1310 (2d Cir. 1997) ("When it is clear that, from the date of filing, the

debtor has no reasonable probability of emerging from the bankruptcy proceedings and no realistic

chance of reorganizing, them the Chapter 11 petition may be frivolous." (citation omitted)); *In re*

*HBA East, Inc.*, 87 B.R. 248, 260 (Bankr. E.D.N.Y. 1988) ("Chapter 11 relief should not be

available to entities filing to obtain a perceived advantage in litigation with others or to provide an

alternate judicial forum.").  As explained above, this involuntary chapter 11 case has no chance of

leading to a successful reorganization given the opposition of the Putative Debtor, the pendency

of both the Mexican Liquidation Proceeding and the Foreign Representative's petition seeking

recognition of that proceeding, and the location of the Putative Debtor's managers, employees,

operations, and most of its assets.  Accordingly, dismissal of this proceeding is appropriate.[33]

59.     In addition, if the Delaware Bankruptcy Court grants the Chapter 15 Petition and

recognizes the Mexican Liquidation Proceeding as a foreign main proceeding, dismissal of the

Involuntary Case should be granted under section 305(a)(2) of the Bankruptcy Code because the

purposes of chapter 15 would best be served by such dismissal for the reasons set forth in this

Motion.

## V.     THE COURT SHOULD DISMISS THE INVOLUNTARY PETITION FOR "CAUSE" UNDER SECTION 1112(b) OF THE BANKRUPTCY CODE.

60.     Section 1112(b) of the Bankruptcy Code authorizes courts to dismiss or convert

chapter 11 cases "for cause" if dismissal or conversion is in the best interests of creditors and the

estate." 11 U.S.C. § 1112(b)(1).  Although section 1112(b)(4) lists matters that constitute sufficient

"cause," the list is not exhaustive and courts may consider the "totality of the circumstances" in

determining whether sufficient cause exists. *In re Yukos Oil Co.*, 321 B.R. at 410.  Once cause is

---

[33]     The Putative Debtor reserves its right to seek its costs and reasonable attorney's fees from the Involuntary Petitioners under section 303(i) of the Bankruptcy Code.

demonstrated, the court must ascertain whether granting a motion to dismiss is in the best interests of creditors and the debtor's estate. *Am. Capital Equip., LLC*, 688 F.3d 145, 161 (3d Cir. 2012).

61.     Where a debtor is unable to effectuate a chapter 11 plan, dismissal is appropriate because "neither creditors nor the estate could conceivably benefit" from the continued adjudication of the chapter 11 proceedings. *See id*. at 162, 163 (3d Cir. 2012) (finding that the "best interest of creditors and the estate" warranted relief under section 1112(b) where "it is clear that . . . no future plan would be able to be effectuated under Chapter 11.").

62.     The same reasons that support dismissal under section 305(a)(1) also support dismissal for cause under section 1112(b). *See In re Yukos Oil Co.*, 321 B.R. at 410 (noting that both section 305 and section 1112 provided the "procedural mechanisms" for dismissal.). Dismissal is under appropriate under section 1112(b) where (i) the majority of the debtor's assets are located in foreign jurisdiction; (ii) the vast majority of the debtor's business and financial activities occur in a foreign jurisdiction; (iii) there is no evidence that the U.S. court is "uniquely qualified, or more able than the other forums, to consider the issues presented"; and (iv) it is unclear that the U.S. court could obtain personal jurisdiction of the pertinent parties sufficient to grant the relief sought in the chapter 11 proceedings. *See id.* at 410-11. As explained, most of the Putative Debtor's assets are located in Mexico, the Putative Debtor's operations, managers, and employees are located in Mexico, this Court is not uniquely qualified to resolve the issues this Involuntary Case would present, and it is unclear whether the Court's orders would be enforced in Mexico even if the Involuntary Case continued. Nor is there any evidence that this Involuntary Case would be in the "best interest of creditors and the estate" given the proceeding underway in Mexico. Accordingly, dismissal under section 1112(b) is appropriate.

## **NO PRIOR REQUEST**

63.     No prior application for the relief requested herein has been made to this Court or any other court.

## **NOTICE**

64.     Notice of this Motion will be provided all parties listed on **Exhibit B**.  The Putative Debtor submits that no other or further notice is necessary.

## **CONCLUSION**

65.     WHEREFORE, the Putative Debtor respectfully requests that the Court grant the relief requested in the Proposed Order dismissing or denying the involuntary chapter 11 petition.

Dated: July 14, 2022

Respectfully submitted,

/s/ *John K. Cunningham*

**WHITE & CASE LLP**

John K. Cunningham
J. Christopher Shore
Philip M. Abelson
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 819-8200
jcunningham@whitecase.com
cshore@whitecase.com
philip.abelson@whitecase.com

Richard S. Kebrdle (*pro hac vice* pending)
Jason N. Zakia (*pro hac vice* pending)
Jesse Green (*pro hac vice* pending)
200 South Biscayne Boulevard, Suite 4900
Miami, FL 33131
Telephone: (305) 371-2700
rkebrdle@whitecase.com
jzakia@whitecase.com
jgreen@whitecase.com

*Counsel to the Putative Debtor*